Filed 9/16/24  Morales v. Midland Credit Management CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| EDWARD RAZO MORALES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>    Defendant and Respondent. | H050950<br>(Santa Clara County<br>Super. Ct. No. 19CV356585) |

Plaintiff Edward Razo Morales appeals from the dismissal with prejudice of his individual claims under the Fair Debt Buying Practices Act (Civ. Code, § 1788.50 et seq.) against defendant Midland Credit Management, Inc. (Midland).  Unable to discern any permissible basis for dismissal with prejudice, we reverse the judgment.

Morales also appeals from an interlocutory order dismissing class claims.  Before the dismissal of his individual claims, Morales unsuccessfully sought relief from his contractual class action waiver, relief he asserted Code of Civil Procedure section 1281.98 entitled him for Midland's failure to timely pay certain arbitration fees.[1] The trial court, however, correctly determined that section 1281.98 is inapplicable here, as the arbitration agreement is " 'governed by, and enforceable under,' " the Federal

---

[1] Undesignated statutory references are to the Code of Civil Procedure. Section 1281.98 is part of the California Arbitration Act (CAA) (§ 1280 et seq.).

Arbitration Act (FAA) (9 U.S.C. § 1 et seq.). So our reversal of the judgment of dismissal will leave undisturbed the order denying reinstatement of Morales's class claims.

## I.  BACKGROUND

In October 2019, Morales filed a class action complaint alleging that Midland failed to include in a debt collection letter a notice that Civil Code section 1788.52, subdivision (d)(1) requires in a first written communication with a debtor. Midland sent the letter in connection with a " 'charged-off consumer debt' " that Midland bought from Credit One Bank, N.A. (Credit One).

Midland petitioned the trial court to compel individual arbitration under an agreement between Morales and Credit One. In December 2020, the trial court entered an order compelling individual arbitration, dismissing Morales's putative class claims as waived by the arbitration provision, and staying trial court proceedings.

The day the order issued, Morales initiated arbitration with the American Arbitration Association (AAA) and paid his filing fee. Around February 2021, the parties began individual settlement negotiations. In June 2021, AAA notified the parties that it had appointed an arbitrator and invoiced Midland $2,900. In the invoice, AAA advised that the arbitration was covered by sections 1281.97 and 1281.98, under which payment had to be received by July 30, 2021. The parties agreed to a settlement amount shortly after the invoice was sent, but they never settled all disputed issues.[2] Midland did not pay the $2,900 arbitration fees invoiced by AAA.[3]

---

[2] The parties disputed whether attorney fees should be treated as Morales's taxable income.

[3] Midland asks us to take judicial notice of the AAA's consumer arbitration rules to support Midland's assertion that its payment would not have been refundable. Because the reasonableness of Midland's decision not to pay the fee is irrelevant to the present appeal, we deny Midland's request. (See *Grosz v. California Dept. of Tax & Fee Administration* (2023) 87 Cal.App.5th 428, 447, fn. 12.)

On the deadline for AAA's receipt of payment, Morales notified AAA that settlement negotiations had reached an impasse and asked that the arbitration proceed. AAA cited sections 1281.97 and 1281.98 and informed the parties that Midland's failure to pay its fee prevented the arbitration from proceeding unless the parties both agreed to extend Midland's deadline.[4] Morales then "elect[ed] to withdraw the claim from [a]rbitration" and asked the case manager to close the case. In September 2021, over Midland's objection, the case manager advised the parties that AAA was closing the arbitration.

In February 2022, Morales moved the trial court to reinstate his class action, on the ground that section 1281.98 authorized his withdrawal from arbitration of his individual claim. Opposing the motion, Midland argued that Morales should be compelled to resume arbitration. In June 2022, the trial court denied Morales's motion, reasoning that section 1281.98 did not apply because the parties adopted the FAA in their arbitration agreement. (The choice-of-law provision also specified: "(to the extent State law is applicable), the laws of the State of Nevada.") The trial court declined to address Midland's request to compel Morales to resume arbitration, reasoning that the request, raised in Midland's opposition brief, was not properly before the court.

At a case management conference later in June before a different judge,[5] Morales did not appear and the court set the matter "for dismissal review after settlement." (The

---

[4] Where applicable, sections 1281.97 and 1281.98 make certain remedies available to a consumer when the drafting party fails to pay arbitral fees within 30 days of their due date. (See *Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1063, 1066–1067.) These remedies include withdrawing the claim from arbitration and proceeding in a court of appropriate jurisdiction. (*Id*. at p. 1066.) The FAA does not have analogous provisions. (See, e.g., *Hernandez v. Sohnen Enterprises, Inc.* (2024) 102 Cal.App.5th 222, 243 (*Hernandez*).)

[5] One judge presided over Morales's motion practice, and a different judge handled case management issues.

record does not disclose the basis for the trial court's mistaken belief the case had settled.)  The next month, the court gave notice of a hearing on "DISMISSAL AFTER SETTLEMENT" (boldface omitted), citing its duty to dismiss under California Rules of Court, rule 3.1385 in the event of settlement.

Morales moved for reconsideration of the denial of his reinstatement motion.  In his reconsideration motion, Morales recharacterized his prior motion as a request to vacate the order compelling arbitration and argued that section 1281.98 applied.  Morales contended that the parties' contrary choice of law should not be enforced.  Noting that Morales's motion for reconsideration seemed to request different relief than his original motion, in March 2023 the trial court denied Morales's request for reconsideration on the same ground as it had denied his original motion—section 1281.98 did not apply because the parties "agreed that the procedural aspects of the FAA would apply to their dispute."

Later that month, the case management judge held the hearing on dismissal after settlement.  According to the minutes:  "Discussions held[.] [¶] Per Defense counsel, matter should have been dismissed per [order denying reconsideration] on [March 3, 2023.] [¶] Matter is dismissed with prejudice."  The case management judge later entered a judgment of dismissal predicated on the minute order.  We deemed Morales's notice of appeal filed the date of the judgment.

## II.  DISCUSSION

Because the trial court lacked authority to dismiss the action with prejudice, we will reverse the judgment.  Because Morales's challenge to the order denying reinstatement of his class action is properly within the scope of his appeal from the final judgment, we will reach the merits of that order.  But we reject Morales's foundational contention that the trial court should have applied section 1281.98 in considering reinstatement.  Because Morales has not shown error in the trial court's refusal to

4

reinstate his class action, we will affirm that order and the following order denying reconsideration.

## A. *Dismissal of Morales's Individual Claims with Prejudice*

Morales contends that the trial court had no proper basis to dismiss his individual claims. We conclude that the trial court's dismissal *with prejudice* was reversible error.

Preliminarily, we cannot rely on the reason the trial court adopted in dismissing Morales's individual claims—a defense representation that the action "should have been dismissed per" the order denying reconsideration of Morales's reinstatement motion. Nothing in the referenced order denying reconsideration, issued by a different judge, suggested that the denial warranted dismissal of individual claims. In opposing reconsideration, Midland itself had sought no affirmative relief, dismissal or otherwise. Moreover, when Midland sought affirmative relief—a return to arbitration—in its opposition to Morales's initial reinstatement motion, the trial court denied the request because Midland had not brought its own affirmative motion. The order denying reconsideration addressed only Morales's effort to unwind the order dismissing his class claims and compelling him to arbitrate his individual claims.

On appeal at least, Midland does not rely on the order denying reconsideration as justification for the dismissal with prejudice. Instead, Midland posits that the dismissal was based on Morales's "failure to initiate arbitration following the court's repeated rulings that the matter should be arbitrated." But the trial court never addressed the proper forum for the individual claim after AAA closed the arbitration. There were no "repeated rulings" that the matter should be arbitrated—only that Morales could not pursue class claims.[6]

---

[6] Midland makes passing references to *Charles J. Rounds Co. v. Joint Council of Teamsters* (1971) 4 Cal.3d 888 as the sole authority for its contention that "[d]ismissal may be appropriate where a party refuses to arbitrate a matter after being compelled to." The California Supreme Court in *Charles* rejected an employer's contention that the trial

Midland contends that we should nevertheless affirm the trial court's order because the lapse of more than three years since the action had commenced gave the court discretion to dismiss Morales's action for delay in prosecution. A trial court has discretion to dismiss an action for delay in prosecution on its own motion under rules adopted by the Judicial Council. (See §§ 583.410, 583.420, subd. (a)(2)(A).) Sections 583.410 and 583.420, subdivision (a)(2) only permit dismissal *without prejudice*. (§ 581, subd. (g) [providing that dismissal "under the applicable provisions of Chapter 1.5," which includes §§ 583.410 and 583.420, is "without prejudice"]; *Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, 214–215 (*Franklin Capital*); *Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 288–289.) A trial court order granting a discretionary motion to dismiss for failure to prosecute is reviewed for abuse of discretion. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 698.) Indulging " ' " ' "[a]ll intendments and presumptions . . . to support [the trial court's order] on matters as to which the record is silent" ' " ' " (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 639), we still cannot conclude that the trial court dismissed the action for lack of prosecution.[7]

---

court should have stayed the employer's action pending arbitration rather than dismissing it, highlighting that the employer had never attempted to pursue arbitration; the court expressed no opinion, however, on whether the employer retained the right to pursue its claim in arbitration. (*Id*. at pp. 899–900.)

[7] "[W]hen the court gives an incorrect legal reason for its ruling, we [ordinarily] look for any other correct legal basis on which to sustain the order." (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1477.) But "[w]hen the record clearly demonstrates what the trial court did, we will not presume it did something different." (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1384.) Although the minutes identify only one basis for the trial court's dismissal, their brevity leaves them ambiguous enough that we will consider whether there were any other viable bases to sustain the order.

As a matter sounding in due process, Morales had neither adequate notice nor an adequate opportunity to respond before the trial court dismissed the case. Before a trial court may dismiss an action on its own motion for failure to prosecute, the court must give the plaintiff at least 20 days' notice.[8] (§ 583.410, subd. (b); Cal. Rules of Court, rule 3.1340(b); *Sakhai v. Zipora* (2009) 180 Cal.App.4th 593, 598–600 (*Sakhai*); see also *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 561, fn. 7 [observing that "due process demands notice to the plaintiff adequate to defend against the charge of procrastination" even "where the court itself initiates a motion to dismiss"].) But Morales had no advance notice that the case could be dismissed for failure to prosecute: The trial court's notice alerted Morales only to the prospect that the case might be dismissed because the court was of the impression that the parties had settled, not for any other reason. The court's omission of the notice required as a matter of due process suggests that the basis for dismissal was not Morales's failure to prosecute, as Midland retrospectively posits. Moreover, that the dismissal was "with prejudice" likewise prevents us from rehabilitating the court's ultra vires order by relying on sections 583.410 or 583.420. Even assuming that Morales waived any right to adequate notice by a failure to object (see *Wilson*, at p. 561), the trial court had no discretion to dismiss the action *with prejudice*.[9]

Midland argues that Morales's failure to preserve a record of the hearing constitutes a forfeiture of any objection to the trial court's dismissal of his action with prejudice. But the minutes of the hearing persuade us that Morales opposed the dismissal of his action with prejudice. We cannot envision what "[d]iscussions" at a hearing on

---

[8] A lengthier notice period would have been required on a defense motion. (See Cal. Rules of Court, rule 3.1342; *Sakhai*, *supra*, 180 Cal.App.4th at pp. 598–600.)

[9] We express no opinion on the propriety of a discretionary dismissal *without prejudice*.

7

dismissal after settlement would prompt memorializing the defense contention that the case "should have been dismissed per [the order denying reconsideration]"—other than a colloquy in which Morales contested dismissal. On this record, Midland's invitation to presume that Morales acquiesced in the dismissal of his action is unreasonable.

The trial court's erroneous dismissal of Morales's claims with prejudice subjected him to a "permanent bar to any other suit on the same cause of action." (*Gonsalves v. Bank of America Nat. Trust & Savings Assn.* (1940) 16 Cal.2d 169, 172.) Perhaps practical impediments would ultimately prevent Morales from pursuing his claims if they were to be dismissed without prejudice. But the trial court's improvident judgment denied Morales any opportunity to pursue those claims. (Compare *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91 [observing that "[a] dismissal with prejudice is considered a judgment on the merits"] with *Franklin Capital*, *supra*, 148 Cal.App.4th at p. 215 [judgment of dismissal based on delay in prosecution is *not* " 'on the merits,' " and thus is not entitled to preclusive effect].) And to the extent the trial court's error is better understood as improperly dismissing Morales's claims at all, the prejudice flowing from the error is obvious.

Responding to our inquiry on the trial court's discretion to dismiss this action *with prejudice* for failure to prosecute, Midland concedes that the trial court "may not have had authority to dismiss the matter with prejudice." Instead, Midland asks us to amend the order to reflect that the dismissal is without prejudice. (See *Sakhai*, *supra*, 180 Cal.App.4th at p. 600.) Midland's proposal, however, requires us to both ignore the trial court's express invocation of an erroneous basis for dismissal (the order denying Morales's motion for reconsideration) and substitute an equally erroneous basis for the order dismissing the action with prejudice (a discretionary dismissal for delay in prosecution), and then to undertake the additional step of fixing the order (making it a dismissal without prejudice for delay in prosecution) to remedy this additional abuse of discretion Midland would have us impute to the trial court. We decline to undertake so

8

tortuous an exercise of our discretion in formulating a disposition. (See *In re J.R.* (2022) 82 Cal.App.5th 569, 582; cf. *Orthopedic Systems, Inc. v. Schlein* (2011) 202 Cal.App.4th 529, 547–548 [modifying judgment and affirming where the record was sufficiently definite].)

The error apparent from the minutes—dismissing individual claims with prejudice based on an order denying reconsideration as to class claims—would not be cured by changing the dismissal to one without prejudice. As we have explained, the rationale appearing on the face of the minutes does not support any form of dismissal. And modifying the judgment from a dismissal with prejudice to a dismissal without prejudice would "cure" only a different error not indicated by the record—what Midland surmises might have been the trial court's failure to appreciate that a dismissal for failure to prosecute can only be without prejudice. While we look for a correct legal basis to uphold the trial court's order, we are unaware of authority calling for us to presume that the trial court made a different error curable by modifying the trial court's judgment. Moreover, even a dismissal without prejudice may create an insurmountable practical impediment to Morales's claims. (Cf. *Buell v. CBS, Inc.* (1982) 136 Cal.App.3d 823, 826–827 [holding that dismissal without prejudice did not preclude refiling new pleading, subject to the applicable statute of limitations].) We think the more prudent approach here is to reverse the unsupportable judgment of dismissal with prejudice without imposing a modification that presumes, without any support in the record, the trial court erred in some other way.

**B.** *Denial of Reinstatement*

Morales argues that the trial court erred when it denied his motion to reinstate the class action pursuant to section 1281.98. Because section 1281.98 is inapplicable, we affirm the order.[10]

### 1. *Appealability*

As Midland acknowledges, a party who appeals from a final judgment may typically challenge "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of the party." (§ 906; see, e.g., *LaCour v. Marshalls of California, LLC* (2023) 94 Cal.App.5th 1172, 1184.) But Midland argues that the ultimate dismissal of the action on procedural grounds precludes Morales from challenging any interlocutory orders declining to reinstate his class claims. We disagree.

The lone authority Midland cited is expressly limited "to predismissal summary adjudication orders and express[es] no view about whether other nonappealable orders may be reviewed on an appeal from an involuntary dismissal" for failure to diligently prosecute. (*Vernon v. Great Western Bank* (1996) 51 Cal.App.4th 1007, 1015, fn. 8, citing *Salinas v. Atchison, Topeka & Santa Fe Ry. Co.* (1992) 5 Cal.App.4th 1, 8–9 [reviewing interlocutory order denying motion to specially set trial because it necessarily affected the five-year dismissal].) The court's rationale was that review of the summary adjudication order would be meaningless because it deemed the later dismissal of the action for failure to diligently prosecute to be proper: Thus, "the case would remain

---

[10] Like the trial court, we do not address whether section 1281.98, if applicable, would entitle Morales to reinstatement of his class claims.

dismissed" even if "the summary adjudication motion was wrongly decided." (*Vernon*, at p. 1013.) Here, in contrast, the court erred in dismissing Morales's action.

The interlocutory orders are "within the proper scope of review on" Morales's appeal from the final judgment because they "involve[] the merits of the controversy, . . . necessarily affect[] the judgment, and . . . substantially affect[] plaintiff's rights." (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 649; see *id.* at pp. 648–649 [holding that order compelling arbitration meets all three criteria]; see also *George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, 138 [explaining that denial of reconsideration is not itself an appealable order but may be reviewed on appeal from an appealable order].) The ultimate dismissal of Morales's action was expressly predicated on the order denying reconsideration of Morales's motion for reinstatement, which in turn was plainly connected to the original motion. So both interlocutory orders affected, and are directly related to, the judgment. (See generally *Lopez v. Brown* (2013) 217 Cal.App.4th 1114, 1132–1136 [discussing relatedness requirement].) And even if not a proper basis for dismissal, the orders will continue to impact the proceedings on remand, relating as they do to Morales's ability to prosecute even his individual claims in court rather than arbitration. (See *Abramson*, at p. 649 [holding that order compelling arbitration substantially affected plaintiff's rights]; see also *Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 10.) Morales's challenges to the order denying reinstatement and the order denying reconsideration are properly within the scope of his appeal from the final judgment.

## 2.     *Whether Section 1281.98 Applies*

Morales based his request for reinstatement, and his related motion for reconsideration, on section 1281.98. The trial court properly rejected Morales's requests

because the arbitration agreement manifested the parties' intent that the FAA displace the CAA, rendering section 1281.98 inapplicable.[11]

### a. *Legal Principles and Standard of Review*

Absent contrary agreement or preemption, we apply the CAA's procedural provisions. (See *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 786 (*Espinoza*); *Hernandez, supra*, 102 Cal.App.5th at pp. 238–243.) We assume for argument's sake that the parties properly consider section 1281.98 to be among those procedural provisions. (See *Espinoza*, at pp. 771, 786 [applying § 1281.97 by default]; *Hernandez*, at pp. 241–242 [holding that § 1281.97 was inapplicable because the parties selected the procedural provisions of the FAA]; *Hohenshelt v. Superior Court* (2024) 99 Cal.App.5th 1319, 1325, fn. 2 [explaining that §§ 1281.97 and 1281.98 do not require different analysis because the procedures and remedies are largely parallel]; but see *Mave Enterprises, Inc. v. Travelers Indemnity Co.* (2013) 219 Cal.App.4th 1408, 1429 (*Mave*) [describing 9 U.S.C. § 2, which governs the enforceability of an arbitration agreement, as " 'the FAA's *substantive* provision' "].)[12]

Parties may contract out of the CAA's procedural provisions by expressly adopting the FAA's procedural provisions.[13] (*Hernandez, supra*, 102 Cal.App.5th at p. 240; *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 177 (*Valencia*); *Mave, supra*, 219 Cal.App.4th at pp. 1429–1430.) "[W]e examine the language of the contract to

---

[11] Because section 1281.98 is inapplicable, we do not address whether it might entitle Morales to reinstate his class claims.

[12] Morales has offered no argument for reversal if, contrary to our assumption, section 1281.98 might better be understood as a substantive provision governing the enforceability of arbitration agreements. For example, Morales has not disputed that the arbitration agreement involves interstate commerce or that the FAA's substantive provision applies. (See *Mave, supra*, 219 Cal.App.4th at p. 1428.)

[13] Parties may likewise contract out of preemption "by expressly agreeing to apply state law to their agreements." (*Hernandez, supra*, 102 Cal.App.5th at p. 240.)

determine whether the parties intended to apply the FAA to the exclusion of California procedural law." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 383 (*Cronus*).)

" ' "[E]ven when the [FAA] applies, interpretation of the arbitration agreement is governed by state law principles. . . . Under California law, ordinary rules of contract interpretation apply to arbitration agreements. . . ." ' " (*Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649, 662.) " 'A contract must be interpreted so as to give effect to the mutual intent of the parties. [Citation.] The terms of a contract are determined by objective rather than subjective criteria. The question is what the parties' objective manifestations of agreement or objective expressions of intent would lead a reasonable person to believe.' " (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1111.) Because the contract interpretation does not involve the resolution of conflict in extrinsic evidence, we construe the writing de novo. (See *Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 433; *Garner v. Inter-State Oil Co.* (2020) 52 Cal.App.5th 619, 622 ["Our review of the contract language is de novo"].)

### b. *The Parties' Choice of Law*

The parties dispute whether the contractual choice-of-law provision covers the law governing the arbitration. Morales argues that under *Espinoza*, the choice-of-law provision omits the procedural provisions of any jurisdiction, leaving the procedural provisions of the CAA to apply by default. Midland, as did the trial court, emphasizes that the arbitration agreement was by its terms " 'enforceable under' " the FAA, thus the CAA does not apply. The arbitration agreement provides that the FAA governs its enforcement, which forecloses Morales's reliance on section 1281.98 even assuming the section presumptively applies.[14]

---

[14] Midland contends that Morales forfeited all arguments pertaining to the parties' choice of law by failing to raise them before the trial court ruled on his initial motion to

13

"[T]he FAA 'provides for the enforcement of arbitration provisions in any contract evidencing a transaction involving interstate commerce.' " (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 346 (*Victrola*).)  "[W]hen an agreement provides that its 'enforcement' shall be governed by the FAA, the FAA governs a party's motion to compel arbitration." (*Victrola*, at p. 346.)  In *Victrola*, the agreement provided that " '[e]nforcement of this agreement to arbitrate shall be governed by the [FAA].' " (*Victrola*, at p. 343, boldface omitted.)  On a motion to compel arbitration, the trial court applied the CAA rather than the FAA, exercising discretion under section 1281.2 to decline to compel arbitration—discretion foreign to the FAA.  (*Victrola*, at pp. 344–345.)  The Court of Appeal reversed the denial of the motion to compel, concluding that the trial court erred by applying the CAA rather than the FAA.  (*Victrola*, at pp. 348, 357–358.)

Other cases have likewise applied express contractual language concerning enforcement to dictate the applicable body of law governing arbitrability.  For example, in *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, the court deemed a provision that an arbitration agreement's " 'validity, construction, interpretation and enforcement . . . shall be governed by the laws of the State of California,' " was "unquestionably" "broad enough to include state law on the subject of arbitrability." (*Id.* at pp. 716, 724; see also *Cronus*, *supra*, 35 Cal.4th at pp. 387, 394 [holding that agreement that was to be " 'construed and enforced in accordance with and governed by the laws of the State of California' " incorporated the CAA]; *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1121–1122 [holding that agreement to arbitrate " '[p]ursuant to the [FAA]' " "adopted the FAA—all of it—to govern . . . arbitration"]; *Hernandez*, *supra*, 102 Cal.App.5th at p. 241

---

reinstate.  We disagree at least to the extent Midland would sweep in Morales's core contention on appeal—that California procedural law including section 1281.98 applied because the choice-of-law provision did not displace it:  Morales raised that argument in his reply brief in support of his initial motion.

[interpreting provision that " 'agreement is governed by the FAA' " to encompass "both the procedural and substantive provisions of the FAA," in lieu of CAA procedures]; *Valencia*, *supra*, 185 Cal.App.4th at pp. 178, 177 [holding that agreement "expressly incorporate[d] the CAA's procedural provisions" where " ' " 'By initialing in the space below you are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral arbitration *as provided by California law . . . .* If you refuse to submit to arbitration after agreeing to this provision, *you may be compelled to arbitrate* under the authority of the *California Code of Civil Procedure*' " ' "].)

The choice-of-law provision here is not materially distinguishable from the choice-of-law provision in *Victrola*. The agreement is expressly "governed by" and "enforceable" under the FAA or, if state law applies, Nevada law. Thus, the agreement's plain language calls for enforcement under the FAA and, where the FAA is inapplicable, under Nevada law; the plain language omits any call for enforcement under California law. In the present appeal Morales has not disputed that the FAA is implicated because the contract involves interstate commerce (see *Cronus*, *supra*, 35 Cal.4th at p. 384), so the contract calls for the application of the FAA rather than Nevada law. As in *Victrola*, the parties through their choice-of-law provision adopted the FAA to govern enforcement of the arbitration provision. And the present motions were enforcement proceedings governed by the FAA under the contractual choice of law.

Morales would have us distinguish *Victrola* as "about whether a party could be compelled to arbitrate its claims at all, not about what happened after one party initiated an arbitration, and the other party failed to consummate the arbitration." Although Morales properly concedes that the former involves " 'enforcement' " of an arbitration agreement, he fails to explain why the latter does not. Morales's fundamental contention is that Midland can no longer enforce the arbitration agreement because it failed to timely pay certain arbitral fees. Whether the moving party seeks to enforce an agreement to

15

arbitrate or foreclose enforcement by another party, the issue remains the enforcement of the arbitration agreement. The parties' choice of law makes that question a matter of federal law. Because Morales has made no claim to relief under federal law, we uphold the trial court order denying reinstatement of Morales's class action and its denial of Morales's request for reconsideration of the same order.[15]

Our resolution of the issues before us does not anticipate the next steps to be taken in this litigation, including whether this case will return to arbitration. Those issues are left for the parties and the trial court to navigate on remand.

### III. DISPOSITION

We reverse the judgment but affirm the June 3, 2022 order denying Morales's motion to reinstate his class action and the March 3, 2023 order denying Morales's motion for reconsideration. The matter is remanded for further proceedings consistent with this opinion. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

---

[15] Morales argues that we should apply section 1281.98 because (1) the FAA does not preempt it and (2) choice-of-law principles favor California law over the contractual choice of Nevada law. Because we have concluded the FAA governs enforcement as a matter of contract, we do not address preemption or Morales's related argument against the contractual choice of Nevada law. (See *Hernandez*, *supra*, 102 Cal.App.5th at p. 240; compare *id*. at p. 243 [holding in the alternative that the FAA preempts section 1281.97] with *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 641 [holding that FAA does not preempt § 1281.97].)

_____
LIE, J.

WE CONCUR:


_____
GROVER, ACTING P. J.



_____
BROMBERG, J.



*Morales v. Midland Credit Management, Inc.*
H050950